## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**June 15, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **K.E., C.E., and O.E.**

**No. 18-0221** (Ohio County 16-CJA-105, 16-CJA-106, and 16-CJA-107)

## MEMORANDUM DECISION

Petitioners S.W. and T.W., paternal grandparents and intervenors below, by counsel Betsy Griffith, appeal the Circuit Court of Ohio County's February 7, 2018, order denying their request for placement of the children.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joseph J. Moses, filed a response on behalf of the children in support of the circuit court's order. Petitioners filed a reply. On appeal, petitioners argue that the circuit court erred in denying their request for permanent placement of their grandchildren for purposes of adoption and finding that placement with them was not in the children's best interests.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 28, 2016, the DHHR filed an abuse and neglect petition alleging that the parents abused substances, the home was in deplorable condition, the children were filthy, and the children's hygiene and health was neglected. The children were removed from the home and placed together in a foster home. According to petitioner grandmother, when the children were removed, she immediately informed a Child Protective Services ("CPS") worker that she wished to take custody of the children. Because petitioners lived in Pennsylvania, CPS initiated an Interstate Compact for the Placement of Children ("ICPC") referral so that a home study could be performed at petitioners' home.

In March of 2017, petitioners' home study was approved. Thereafter, petitioner grandmother wrote a letter to the circuit court requesting custody of the children. In June of

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

2017, petitioners filed a motion to intervene in the abuse and neglect proceedings, which the circuit court granted in August of 2017. Also in August of 2017, the parents voluntarily relinquished their parental rights to the children.

On January 8, 2018, the circuit court held a permanency hearing. A CPS worker from Pennsylvania testified that she received petitioners' referral from the DHHR, visited the home on two occasions, and found the home to be "clean, spacious, and appropriate for the children." She further testified that petitioner grandmother was forthcoming regarding prior CPS referrals in 1999 and 2000 involving her and her children, and incidents of domestic violence between her and her ex-husband. Next, evidence was presented in the form of a letter from a caseworker, which explained that when the caseworker first saw the children the day after they were removed from the home in July of 2016, their teeth were black and rotten and they were still in diapers, despite the fact that one of the children was five years old. She also noted that the children were developmentally delayed. The letter further explained that as of April of 2017, the children were well-adjusted in their foster home, had major dental surgeries to repair issues with their teeth, and were "potty-trained" or working on "potty-training." Lastly, the letter reported that the foster parents help the children with homework and educational needs on a daily basis. The DHHR also presented expert witness testimony from Dr. Eric Bernstein, who performed a bonding evaluation. He reported that after spending eighteen months in foster care, the children enjoyed a healthy, strong bond with the foster parents. According to Dr. Bernstein, petitioners expressed frustration with the court system for not placing the children in their care. He opined that petitioners felt entitled as grandparents to care for the children. Further, although Dr. Bernstein believed petitioners were supportive and caring, he questioned the bond between the grandparents and the children due to their lack of contact. He reported that the youngest child had little to no contact with petitioners.

According to the DHHR and the guardian, placement of the children with the foster parents was in the children's best interests. The multidisciplinary treatment ("MDT") team had concerns with placement with the grandparents due to their CPS history and petitioner grandmother's history of domestic violence with her ex-husband. The MDT team considered the incidents wherein petitioner grandmother failed to protect her own children relevant to the case at hand, especially in light of the fact that she subsequently failed to protect her grandchildren from the abuse of their parents. Further, petitioners had little involvement with the children during the instant proceedings. Petitioner grandmother attended one visit in October of 2016, and petitioner grandfather did not attend any visits. Petitioners blamed their lack of visitation on the court system and the children's mother. However, according to the DHHR and the guardian, petitioners were not prohibited from visiting the children.

The circuit court found that petitioners were aware of the deplorable conditions that the children were living in with their parents. Petitioners knew that the children were developmentally delayed and had black and rotting teeth, but failed to take any legal action or make a referral to the DHHR. The circuit court also found that the children spent little time with petitioners and were bonded with their foster parents. Ultimately, the circuit court found that it

2

was in the children's best interests to remain with the foster parents. Petitioners appeal the circuit court's February 7, 2018, order denying them placement of the children.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioners argue that the circuit court erred in denying their request for placement of the children pursuant to the grandparent preference under West Virginia Code §§ 49-4-114(a)(3) and 49-3-1(3), which provide, in part, that the DHHR shall offer placement of the children to the grandparents "[i]f the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents." However, petitioners misinterpret the grandparent preference. We have held "[t]he preference is just that-a preference. It is not absolute. As this Court has emphasized, the child's best interest remains paramount[.]" *In re K.E.*, 240 W.Va. 220, --, 809 S.E.2d 531, 536 (2018). We have also held that "the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child." *Napoleon S. v. Walker*, 217 W.Va. 254, 261, 617 S.E.2d 801, 808 (2005).

Petitioners acknowledge that the children could not be placed in their custody immediately upon their removal from the home due to the ICPC requirements. While petitioners argue that their home study was approved and that there were "no justifiable concerns with [their] home or care which would prevent them from being considered for permanent placement," the record indicates that the DHHR, the MDT team, and the guardian had numerous concerns about placing the children with petitioners. Notably, respondents and the MDT team were concerned with petitioner grandmother's CPS history, domestic violence with her ex-husband, and her failure to protect her grandchildren from the abuse of their parents. Moreover, the approval of their home study did not automatically deem petitioners suitable adoptive

---

[2]The parents voluntarily relinquished their parental rights to the children. According to the parties, the children are placed in a foster home with a permanency plan of adoption therein.

parents. In addition to the approval of a home study to show that grandparents would be suitable adoptive parents as required by West Virginia Code § 49-4-114(a)(3), "the Legislature has implicitly included the requirement for an analysis by the Department of Health and Human Resources and circuit courts of the best interests of the child, given all circumstances of the case." *Napoleon S.*, 217 W.Va. at 256, 617 S.E.2d at 803, Syl. Pt. 5, in part.

According to the record, the children were placed with their foster parents immediately upon removal from their home. At the time of the dispositional hearing, the children had lived with the foster parents for nearly eighteen months. During that time, the foster parents worked with the children daily to help them acquire life skills that they did not learn from their parents. Additionally, the children had major dental work to repair issues with their rotting teeth, became toilet trained or nearly trained, and made other developmental progressions. Further, although petitioners argue that the "court system itself eliminated any potential bonding during the course of the abuse and neglect proceeding," there is no evidence in the record that they were prohibited from visiting the children. In fact, the record indicates that petitioner grandmother visited the children once in October of 2016 and petitioner grandfather did not visit the children at all. Ultimately, the circuit court determined that the best interests of the children were not served by placement with petitioners, but with the foster parents, based upon a totality of the circumstances.

Petitioners also argue that the circuit court erred in finding that placement with them was not in the children's best interests because a "proper investigation" of their home and their bond with the children was not performed. In support, petitioners argue that a "one-hour bonding evaluation with [petitioners, sixteen] months after the children's removal was not a proper and fair assessment of the proper placement of these children." However, petitioners cite no authority in support of their assertion that the investigation was improper and, furthermore, cite to no authority dictating what procedures necessarily constitute a "proper investigation." The evidence in the record shows that the DHHR, the guardian, and the MDT team cooperated with the caseworkers in Pennsylvania and gathered additional evidence in order to make their recommendation regarding placement of the children. As discussed, placement of the children with the foster parents was determined to be in their best interests based on the specific circumstances of this case.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 7, 2018, order denying petitioners placement of the children is hereby affirmed.

Affirmed.

**ISSUED**: June 15, 2018

4

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Allen H. Loughry II, suspended and therefore not participating